# Exhibit A

# ALEXANDER CAPITAL L.P.

October 4, 2025

Early Works Co., Ltd.
MR Building 3 Floor
5-7-11 Ueno, Taito-ku
Tokyo, 110-0005
Japan

Attn: Satoshi Kobayashi, CEO

Re: Proposed Private Placement

Dear Satoshi,

This agreement confirms our complete understanding with respect to the retention of Alexander Capital, L.P. ("Alexander"), a registered broker-dealer as exclusive underwriter, placement agent and financial advisor to Early Works Co., Ltd., or any successor entities,(the "Company") in connection with a private placement of up to $1,000,000,000 (the "Placement") in digital assets, asset/balance sheet transfer, equity, senior secured debt, junior debt, and/or other debt financing instruments (the "Securities") or merger and/or acquisitions ("Merger"). The terms of the Placement shall be subject to mutual agreement of the Company and each investor in the Placement. The agreement shall contain such terms and conditions as are customarily contained in agreements of such character and among other things, provide for the following:

I.     Appointment.  The Company hereby retains Alexander, and Alexander hereby agrees to act as the Company's placement agent and financial advisor in connection with the Placement, effective as of the date hereof (the "Effective Date").

II.     Term of Retention.  This engagement agreement (the "Engagement Agreement") and the Company's engagement of Alexander as non-exclusive placement agent shall commence at the signing of this document and continue on a non-exclusive basis for one (1) month (the "Term"). Following this initial term, the Engagement Agreement will automatically become exclusive and extend for an additional twelve (12) months upon the signing of a binding term sheet, unless the Company provides at least thirty (30) Business Days prior written notice of termination. Additionally, Alexander must secure, and the Company must receive, at least $5,000,000 in gross proceeds, through a private placement on or before October 10, 2025. If Alexander fails to meet this requirement, the Company reserves the right to terminate the agreement immediately, rendering all terms and conditions of this Engagement Agreement null and void. Please note that by entering into this Engagement Agreement, Alexander is not guaranteeing that a Placement will close. In the event that the Engagement Agreement is terminated for any reason, upon such termination, the Company agrees to reimburse Alexander for the full amount of its actual accountable, out-of-pocket expenses incurred to such date for all such reasonable expenses.

III.     Compensation and Expenses.    Alexander shall be compensated as follows:

a)     *Cash Fee*.  At the closing of the Placement, the Company shall pay to Alexander a cash fee equal to (i) eight percent (8%) of the aggregate gross proceeds up to the first $100 million in gross proceeds; (ii) three percent (3%) of the aggregate gross proceeds in excess of $100 million in gross proceeds; and (iii) one and

1

a half (1.5%) of the aggregate gross proceeds in excess of $500 million in gross proceeds received in the Placement; provided that the cash fee payable to Alexander in connection with the aggregate gross proceeds for the first $500 million raised in the Placement will not exceed four percent (4%). The cash fee is due and payable to Alexander immediately upon the closing of the Placement from proceeds of the Placement and shall be disbursed directly to Alexander simultaneously with the delivery of the proceeds of the Placement to the Company. If the Financing is consummated by means of more than one closing, Alexander shall be entitled to the fees provided herein with respect to the gross proceeds for each such closing.

In the event of a Merger, Alexander shall also be entitled to a Merger Fee equal to 5% of the valuation of the Merger (the "Merger Fee").

b)  *Warrant Coverage.*  The Company shall issue to Alexander or its designees at each Closing, warrants (the "Alexander Warrants") to purchase that number of shares of common stock of the Company equal to four percent (4%) of the aggregate number of shares of common stock (or common stock equivalent, if applicable) placed in each Placement. If the Securities included in a Placement are convertible, the Alexander Warrants shall be determined by dividing the gross proceeds raised in such Placement by the Placement Price (as defined hereunder). The Alexander Warrants shall be in a customary form reasonably acceptable to Alexander, have a term of five (5) years, contain cashless exercise provisions if the shares underlying the warrants are not registered and piggyback registration rights, and have an exercise price equal to 100% of the Placement price per share (or unit, if applicable) in the applicable Placement and if such Placement price is not available, the market price of the common stock on the date a Placement is commenced (such price, the "Placement Price"). Alexander will agree that during the (1) year period following the Closing Date, it will not transfer the Alexander Warrants or the underlying Alexander Securities, except to Alexander officers, partners or members of the selling group. The Alexander Warrants shall contain such terms and conditions as are satisfactory in form and substance to Alexander, the Company and their respective counsel, including, without limitation, a cashless exercise provision, and anti-dilution and exercise provisions.

c)  *Expenses*.  The Company agrees to reimburse Alexander for accountable expenses of up to $200,000 for its legal fees in connection with the Placement, as well as non-accountable expenses incurred by Alexander of up to $25,000 in connection with the Placement.

d)  *Right of First Refusal.*  If, from the date that the initial $5,000,000 Placement is closed with the Company until the 18-month anniversary following consummation of each Placement, the Company or any of its subsidiaries (a) decides to dispose of or acquire business units or acquire any of its outstanding securities or make any exchange or tender offer or enter into a merger, consolidation or other business combination or any recapitalization, reorganization, restructuring or other similar transaction, including, without limitation, an extraordinary dividend or distributions or a spin-off or split-off, Alexander (or any affiliate designated by Alexander ) shall have the right to act as the Company's exclusive financial advisor for any such transaction; or (b) decides to finance new debt or refinance any existing indebtedness, Alexander (or any affiliate designated by Alexander ) shall have the right to act as underwriter, sole book-runner, sole manager, sole placement agent or sole agent with respect to such financing or refinancing regardless of whether it involves any investment banker, book-runner, and/or placement agent; or (c) decides to raise funds by means of a public Placement (including at-the-market facility) or a private placement or any other capital-raising financing of equity, equity-linked or debt securities, Alexander (or any affiliate designated by Alexander ) shall have the right to act as sole book-running manager, sole underwriter or sole placement agent for such financing regardless of whether such financing transaction involves any investment banker, book-runner, and/or placement agent. For the avoidance of any doubt, the Company shall not retain, engage or solicit any investment banker, underwriter, book-runner and/or placement agent in a financing transaction nor agree to any financing transaction regardless of whether or not such financing transaction involves any investment banker, book-runner, and/or placement agent at all without the express written consent of Alexander. The Company shall notify Alexander of its intention to pursue a financing transaction, including the material terms thereof, by providing written notice thereof by email with a confirmatory phone call. Alexander may

2

exercise its Right of First Refusal by, within ten (10) Business Days[1] after the email and confirmatory phone call of such written notice by the Company, providing the Company with substantially similar or better terms as the financing transaction, along with Alexander's provisions for customary fees for transactions of similar size and nature and the provisions of this Agreement, including indemnification, which are appropriate to such a transaction. If Alexander exercises its Right of First Refusal, the Company shall not engage in the financing transaction without the express written consent of Alexander. If Alexander fails to exercise its Right of First Refusal with respect to any financing transaction within ten (10) Business Days after the email and confirmatory phone call of such written notice, then Alexander shall have no further claim or right with respect to the financing transaction. Alexander may elect, in its sole and absolute discretion, not to exercise its Right of First Refusal with respect to any financing transaction; provided that any such election by Alexander shall not adversely affect Alexander's Right of First Refusal with respect to any other financing transaction during the eighteen (18) month period agreed to above.

e)    *Tail*.   Alexander shall be entitled to compensation under clause III(a) hereunder, calculated in the manner set forth therein, with respect to any public or private Placement or other financing or capital-raising transaction of any kind ("Tail Financing") to the extent that such financing or capital is provided to the Company by investors whom Alexander had contacted during the Term and first introduced to the Company in writing, including email, during the Term, if such Tail Financing is consummated at any time within the 18-month period following the expiration or termination of this Agreement.

IV.    Information; Reliance. The Company shall furnish, or cause to be furnished, to Alexander all information requested by Alexander for the purpose of rendering services hereunder and conducting due diligence (all such information being the "Information").  In addition, the Company agrees to make available to Alexander upon request from time to time the officers, directors, accountants, counsel and other advisors of the Company. The Company recognizes and confirms that Alexander (a) will use and rely on the Information, including any documents provided to investors in the Placement (the "Placement Documents"), and on information available from generally recognized public sources in performing the services contemplated by this Agreement without having independently verified the same; (b) does not assume responsibility for the accuracy or completeness of the Placement Documents or the Information and such other information; and (c) will not make an appraisal of any of the assets or liabilities of the Company. Upon reasonable request, the Company will meet with Alexander or its representatives to discuss all information relevant for disclosure in the Placement Documents and will cooperate in any investigation undertaken by Alexander thereof, including any document included or incorporated by reference therein. In connection with the Placement, at the request of Alexander, the Company shall deliver such legal letters (including, without limitation, negative assurance letters), opinions, comfort letters, officers' and secretary certificates and good standing certificates, all in form and substance reasonably satisfactory to Alexander and its counsel as is customary for the Placement. Alexander shall be a third-party beneficiary of any representations, warranties, covenants, closing conditions and closing deliverables made by the Company in any Placement Documents, including representations, warranties, covenants, closing conditions and closing deliverables made to any investor in the Placement.

V.    Due Diligence.  The role of Alexander as placement agent and financial advisor to the Company is subject to and contingent upon the satisfactory completion of a due diligence review of, among other things, the Company's assets, business, future prospects and current and projected financial condition. If, at the completion of its due diligence review, Alexander is not satisfied with the results of its due diligence, this Engagement Agreement shall be immediately terminated by Alexander by providing written notice to the Company to that effect. In the event of such termination, the Company shall have no further obligations to Alexander under this Agreement, including, without limitation, any obligation for payment of any fees. Additionally, the Company will have the same rights regarding the termination of Alexander Capital as described herein. If, upon completing its due diligence review, the Company is unsatisfied with the results, it may immediately terminate this Engagement Agreement by providing written notice to Alexander. In the event of such termination, Alexander will have no further obligations to the Company under this Agreement, including, but not limited

---

[1]  A "Business Day" for purposes of this letter shall be defined as any day that is not a Saturday, Sunday, federal holiday, or day on which the Federal Reserve Bank of New York is not open for business.

to, any obligation for payment of any fees.  Notwithstanding anything to the contrary herein, any termination notice under this section (by either party) may be made via written notice, including email, and shall be effective upon receipt.

VI.    Public Announcements.  Subject to US securities laws, rules and regulations, prior to any press release or other public disclosure relating to services hereunder which are legally permitted, the Company and Alexander shall confer and reach agreement upon the contents of any such disclosure.

VII.    Offers and Sales Only to Institutional and Accredited Investors.   Offers and sales of any securities by the Company in connection with the Placement shall be made only to "qualified institutional buyers", as such term is defined in Rule 144A and Regulation S under the securities Act of 1933, as amended (the "Act"), and/or "accredited investors", as such term is defined in Rule 501 (a) of Regulation D promulgated under the Act.

VIII.    No General Solicitations.   Any offers made in connection with the placement of the Securities will be made only to prospective purchasers on an individual basis and no general solicitation or general advertising in any form will be used to place the Securities.

IX.    Finder's Fee.   The Company represents and warrants to Alexander that (i) it is not obligated to pay a finder's fee or consulting fee to anyone in connection with the introduction of the Company to Alexander in connection with its Placement: (ii) it has not paid any moneys or other compensation or issued any securities to any member of FINRA, or to any affiliate or associate of such a member, or to any person in consideration for such person raising funds for the Company regarding this Placement, or providing consulting services to the Company regarding this Placement, (iii) no such compensation has heretofore been paid to any third party regarding this Placement, except for payment to Alexander hereunder.

X.    Indemnity.

   a)  In connection with the Company's engagement of Alexander hereunder, the Company hereby agrees to indemnify and hold harmless Alexander and its affiliates, and the respective controlling persons, directors, officers, members, shareholders, agents and employees of any of the foregoing (collectively the "Indemnified Persons"), from and against any and all claims, actions, suits, proceedings (including those of shareholders), damages, liabilities and expenses incurred by any of them (including the reasonable fees and expenses of counsel), as incurred, whether or not the Company is a party thereto (collectively a "Claim"), that are (A) related to or arise out of (i) any actions taken or omitted to be taken (including any untrue statements made or any statements omitted to be made) by the Company, or (ii) any actions taken or omitted to be taken by any Indemnified Person in connection with the Company's engagement of Alexander , or (B) otherwise relate to or arise out of Alexander 's activities on the Company's behalf under Alexander's engagement, and the Company shall reimburse any Indemnified Person for all expenses (including the reasonable fees and expenses of counsel) as incurred by such Indemnified Person in connection with investigating, preparing or defending any such claim, action, suit or proceeding, whether or not in connection with pending or threatened litigation in which any Indemnified Person is a party. The Company will not, however, be responsible for any Claim that is finally judicially determined to have resulted from the gross negligence or willful misconduct of any such Indemnified Person for such Claim.

   b)  The Company further agrees that it will not, without the prior written consent of Alexander, settle, compromise or consent to the entry of any judgment in any pending or threatened Claim in respect of which indemnification may be sought hereunder (whether or not any Indemnified Person is an actual or potential party to such Claim), unless such settlement, compromise or consent includes an unconditional, irrevocable release of each Indemnified Person from any and all liability arising out of such Claim.

   c)  Promptly upon receipt by an Indemnified Person of notice of any complaint or the assertion or institution of any Claim with respect to which indemnification is being sought hereunder, such Indemnified Person

4

shall notify the Company in writing of such complaint or of such assertion or institution but failure to so notify the Company shall not relieve the Company from any obligation it may have hereunder, except and only to the extent such failure results in the forfeiture by the Company of substantial rights and defenses. If the Company so elects, or is requested by such Indemnified Person, the Company will assume the defense of such Claim, including the employment of counsel for such Indemnified Person and the payment of the fees and expenses of such counsel, provided, however, that such counsel shall be reasonably satisfactory to the Indemnified Person and provided further that if the legal counsel to such Indemnified Person reasonably determines that having common counsel would present such counsel with a conflict of interest or if the defendant in, or target of, any such Claim, includes an Indemnified Person and the Company, and legal counsel to such Indemnified Person reasonably concludes that there may be legal defenses available to it or other Indemnified Persons different from or in addition to those available to the Company, such Indemnified Person will employ its own separate counsel (limited to one law firm and local counsel, if necessary) to represent or defend him, her or it in any such Claim and the Company shall pay the reasonable fees and expenses of such counsel. If the Company does not assume the defense of such Claim, such Indemnified Person will employ its own separate counsel (limited to one law firm and local counsel, if necessary) to represent or defend him, her or it in any such Claim and the Company shall pay the reasonable fees and expenses of such counsel. Notwithstanding anything herein to the contrary, if the Company fails timely or diligently to defend, contest, or otherwise protect against any Claim, the relevant Indemnified Person shall have the right, but not the obligation, to defend, contest, compromise, settle, assert crossclaims, or counterclaims or otherwise protect against the same, and shall be fully indemnified by the Company therefor, including without limitation, for the reasonable fees and expenses of its counsel  (limited to one law firm and local counsel, if necessary) and all amounts paid as a result of such Claim or the compromise or settlement thereof.  In addition, with respect to any Claim in which the Company assumes the defense, the Indemnified Person shall have the right to participate in such Claim and to retain his, her or its own counsel therefor at his, her or its own expense.

d)   The Company agrees that if any indemnity sought by an Indemnified Person hereunder is held by a court to be unavailable for any reason then (whether or not Alexander is the Indemnified Person), the Company and Alexander shall contribute to the Claim for which such indemnity is held unavailable in such proportion as is appropriate to reflect the relative benefits to the Company, on the one hand, and Alexander on the other, in connection with Alexander 's engagement referred to above, subject to the limitation that in no event shall the amount of Alexander 's contribution to such Claim exceed the amount of fees actually received by Alexander from the Company pursuant to Alexander 's engagement. The Company hereby agrees that the relative benefits to the Company, on the one hand, and Alexander on the other, with respect to Alexander 's engagement shall be deemed to be in the same proportion as (a) the total value paid or proposed to be paid or received by the Company pursuant to the Placement (whether or not consummated) for which Alexander is engaged to render services bears to (b) the fee paid or proposed to be paid to Alexander in connection with such engagement. No person found liable for a fraudulent misrepresentation shall be entitled to contribution from any person who is not also found liable for fraudulent misrepresentation.

e)   The Company's indemnity, reimbursement and contribution obligations under this Agreement (a) shall be in addition to, and shall in no way limit or otherwise adversely affect any rights that any Indemnified Person may have at law or at equity and (b) shall be effective whether or not the Company is at fault in any way.

XI.    Limitation of Engagement to the Company.  The Company acknowledges that Alexander has been retained only by the Company, that Alexander is providing services hereunder as an independent contractor (and not in any fiduciary capacity) and that the Company's engagement of Alexander is not deemed to be on behalf of, and is not intended to confer rights upon, any shareholder, owner or partner of the Company or any other person not a party hereto as against Alexander or any of its affiliates, or any of its or their respective officers, directors, controlling persons (within the meaning of Section 15 of the Securities Act or Section 20 of the Securities Exchange Act of 1934, as amended (the "Exchange Act")), employees

5

or agents.  Unless otherwise expressly agreed in writing by Alexander, no one other than the Company is authorized to rely upon this Agreement or any other statements or conduct of Alexander, and no one other than the Company is intended to be a beneficiary of this Agreement. The Company acknowledges that any recommendation or advice, written or oral, given by Alexander to the Company in connection with Alexander's engagement is intended solely for the benefit and use of the Company's management and directors in considering a possible Placement, and any such recommendation or advice is not on behalf of, and shall not confer any rights or remedies upon, any other person or be used or relied upon for any other purpose.  Alexander shall not have the authority to make any commitment binding on the Company. The Company, in its sole discretion, shall have the right to reject any investor introduced to it by Alexander.

XII.    <u>Limitation of Alexander 's Liability to the Company</u>. Alexander and the Company further agree that neither Alexander nor any of its affiliates or any of its or their respective officers, directors, controlling persons (within the meaning of Section 15 of the Securities Act or Section 20 of the Exchange Act), employees or agents shall have any liability to the Company, its security holders or creditors, or any person asserting claims on behalf of or in the right of the Company (whether direct or indirect, in contract, tort, for an act of negligence or otherwise) for any losses, fees, damages, liabilities, costs, expenses or equitable relief arising out of or relating to this Agreement or the services rendered hereunder, except for losses, fees, damages, liabilities, costs or expenses that arise out of or are based on any action of or failure to act by Alexander and that are finally judicially determined to have resulted solely from the gross negligence or willful misconduct of Alexander.

XIII.   <u>Key Alexander Personnel</u>.  Notwithstanding anything to the contrary herein, in the event any material members of the Alexander investment banking or capital markets team leave or are terminated from Alexander, the Company shall have the option to terminate this Agreement effective immediately after giving Alexander five (5) days written notice, including via email.

XIV.    <u>Governing Law and Venue</u>.  This Engagement Agreement shall be deemed to have been made and delivered in New York, New York and shall be governed as to validity, interpretation, construction, effect and in all other aspects by the laws of the State of New York. The Company agrees that any legal suit, action or proceeding arising out of or relating to this letter shall by instituted exclusively in New York State Court or in the United States District Court; waives any objection to the venue of any such suit, action or proceeding and the right to assert such forum is not a convenient forum; and irrevocably consents to the jurisdiction of the New York State Court or the United States District Court in any such suit, action or proceeding. The Company further agrees to accept and acknowledge service of any and all process which may be served in any such suit, action or proceeding in the New York State Court or the United States District Court and agrees that service of process upon it mailed by certified mail to as address shall be deemed in every respect effective service of process upon it in any such suit, action or proceeding. The parties hereby expressly waive all rights to trial by jury in any suit, action or proceeding arising under this Agreement.

XV.     <u>Notices</u>.  All notices hereunder will be in writing and sent by certified mail, hand delivery, overnight delivery or e-mail, if sent to Alexander, at the address set forth on the first page hereof, e-mail: Jonathan Gazdak at jgazdak@alexandercapitallp.com; & Chris Carlin at ccarlin@alexandercapitallp.com, and if sent to the Company, to the address set forth on the first page hereof, e-mail: satoshi-k@e-arly.works, Attention: Chief Executive Officer.  Notices sent by certified mail shall be deemed received five days thereafter, notices sent by hand delivery or overnight delivery shall be deemed received on the date of the relevant written record of receipt, notices sent by e-mail shall be deemed received as of the date and time they were sent.

XVI.    <u>Miscellaneous</u>.

    a)  The Company acknowledges that Alexander and its affiliates may have and may continue to have investment banking and other relationships with parties other than the Company pursuant to which Alexander may acquire information of interest to the Company.  Alexander shall have no obligation to disclose such information to the Company or to use such information in connection with any contemplated transaction.

b)  To help the United States government fight the funding of terrorism and money laundering, the federal laws of the United States require all financial institutions to obtain, verify and record information that identifies each person with whom they do business. This means Alexander must ask the Company for certain identifying information, including a government-issued identification number (e.g., a U.S. taxpayer identification number) and such other information or documents that Alexander considers appropriate to verify the Company's identity, such as certified articles of incorporation, a government-issued business license, a partnership agreement or a trust instrument.

c)  The Company represents and warrants that it has all requisite power and authority to enter into and carry out the terms and provisions of this Agreement and the execution, delivery and performance of this Agreement does not breach or conflict with any agreement, document or instrument to which it is a party or bound.

d)  This Agreement shall not be modified or amended except in writing signed by Alexander and the Company. This Agreement shall be binding upon and inure to the benefit of both Alexander and the Company and their respective assigns, successors, and legal representatives. This Agreement constitutes the entire agreement of Alexander and the Company with respect to the subject matter hereof. If any provision of this Agreement is determined to be invalid or unenforceable in any respect, such determination will not affect such provision in any other respect, and the remainder of the Agreement shall remain in full force and effect.

e)  This Agreement may be executed in counterparts (including facsimile or electronic counterparts), each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

If the foregoing correctly sets forth our understanding with respect to the proposed placement on behalf of the Company, will you please so confirm by signing and returning one copy of this letter, whereupon we will instruct our counsel to cooperate with counsel for the Company in the preparation of the appropriate documents so as to expedite the successful consummation of the private placement.

Alexander will remain committed to entering into this agreement, provided it is executed by you on or before October 4, 2025.

Accepted and Confirmed on this 3rd day of October 2025.

ALEXANDER CAPITAL, L.P.

By: _____

JONATHAN GAZDAK
Managing Director

EARLY WORKS CO., LTD.

By: _____

SATOSHI KOBAYASHI
Chief Executive Officer